# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| JENNIFER LEE OWENS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 19-00402-CV-NKL |
| ANDREW M. SAUL, Commissioner of Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) ) |

## ORDER

Plaintiff Jennifer Lee Owens appeals the Commissioner of Social Security's final decision denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. For the reasons set forth below, the Court affirms the Administrative Law Judge's decision.

**I.     Background**

Owens alleges that she became disabled on May 1, 2015. (Tr. 76). She filed her initial applications for disability insurance and SSI benefits on November 2, 2015. (Tr. 367–79). Owens claimed disability due to a head injury after she struck her head against a concrete wall on July 17, 2014 and post-traumatic stress disorder (PTSD). (Tr. 82, 418). The ALJ had three hearings for this case held on June 6, 2017, November 1, 2017 and May 1, 2018, and subsequently issued a decision denying benefits on July 5, 2018. (Tr. 76–90). The Appeals Council declined review in a letter dated March 22, 2019. (Tr. 1–6). Owens appealed to this Court.

The Administrative Law Judge (ALJ) concluded that Owens had the severe impairments of traumatic brain injury vs. post-concussive syndrome with residuals, anxiety disorder, PTSD, and a depressive disorder (Tr. 79). The ALJ found that Owens had the residual functional capacity (RFC) to perform light work, as defined by 20 C.F.R. 404.1567(b) and 416.967(b), with the following limitations:

> Claimant is able to sit for 6 hours out of 8 hours for 1 hour at a time; stand for 4 hours out of 8 hours for 30 minutes at a time; and walk for 4 hours out of 8 hours for 30 minutes at a time. She must have the ability to shift positions without leaving her duty station. Claimant is able to lift, carry, push, or pull 10 pounds frequently and up to and including 20 pounds occasionally. Claimant should never climb ladders, ropes, or scaffolding. She can occasionally climb stairs or ramps and crawl. Claimant is able to stoop; kneel; and crouch frequently. She must have a work environment that is free of blinking lights, including neon lights. She can occasionally use a computer and read. Her work environment must have no more than a moderate noise level, such as that of an office. Claimant must have an indoor work environment. She should never be exposed to extreme cold; extreme heat; wetness; humidity; or noxious fumes, odors, dust or airborne particulate. Claimant should never be exposed to vibration or to unprotected heights.
> Mentally, claimant must have job duties that are simple, repetitive, and routine. She should never be expected to exercise independent judgment regarding the nature of her job duties. Claimant is able to concentrate for 2 hours at a time with regularly scheduled breaks consisting of one 15-minute break in the morning; a lunch period of at least 30 minutes; and a 15-minute break in the afternoon. Claimant should never have duties that require public interaction. She can have up to occasional contact with co-workers and with supervisors.

(Tr. 81). Based on the testimony of vocational experts (VE), the ALJ concluded that given Owens's RFC, Plaintiff could not perform her past relevant work as a certified nursing assistant, but could perform other work existing in significant numbers in the national economy, including price marker (DOT 209.587-034), routing clerk (DOT 222.587-038), garment sorter (DOT 222.687-014), electronics worker (DOT 726.687-010), small products assembler (DOT 739.687-030), and inserting machine operator (DOT 208.685-018). Therefore, the ALJ determined Owens was able to perform work that exists in significant numbers in the national economy and was not "disabled"

as defined by the Social Security Act. (Tr. 90). The ALJ's decision, as the final decision by the Commissioner, is subject to judicial review.

## II. Legal Standard

In reviewing the Commissioner's denial of benefits, the Court considers whether "substantial evidence in the record as a whole supports the ALJ's decision." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). "Substantial evidence" is less than a preponderance but enough that a reasonable mind would find it adequate to support the ALJ's conclusion. *Id.* The Court must consider evidence that both supports and detracts from the ALJ's decision. *Id.* "[A]s long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (quotation marks and citation omitted). The Court must "defer heavily to the findings and conclusions of the Social Security Administration." *Michel v. Colvin*, 640 F. App'x 585, 592 (8th Cir. 2016) (quotation marks and citations omitted).

## III. Discussion

### A. Whether the ALJ Properly Relied on the Testimony of the Vocational Expert

At the fifth stage of the evaluation, the Commissioner bore the burden of proving "first, that the claimant retains the residual functional capacity to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). VEs are considered reliable sources of occupational evidence, but if there is an "unrecognized, unresolved, and unexplained conflict between the VE's testimony and the DOT, the VE's testimony cannot provide substantial evidence to support the ALJ's disability determination and reversal is necessary." *McPheeters v. Astrue*, No. 4:12–0137–DGK-SSA, 2013 WL 523674, at *2 (W.D. Mo. Feb. 12, 2013). Owens argues that substantial evidence

3

does not support the ALJ's determination at the fifth stage, because there was not proof that the limitations on noise levels, occasional reading, and exposure to airborne particulates were compatible with the representative jobs the VEs identified.

### 1. Limitation to Moderate Noise

Owens argues that the jobs recommended by the VEs require noise levels that are inconsistent with the RFC limitation of "no more than a moderate noise level, such as that of an office." (Tr. 81). In particular, Owens argues that all of the jobs identified by the VEs are noise level three jobs according to the DOT, they include jobs done in factory environments, and they are not office level noise jobs as listed in the Program Operations Manual System (POMS). POMS DI 25001.001 A. 49 (describing a moderate noise level three as a "[d]epartment or grocery store" but a noise level two is that of a library or "many private offices").

The ALJ did not limit Owens to working in the noise level of an office or quiet environment, rather the ALJ's RFC specifically limited Owens to "no more than a moderate noise level." But even if Owens was limited to an office environment instead of a moderate noise environment, this still can include a level-three noise environment as shown by the Selected Characteristics for Occupational Exploration's (SCO)[1] own examples. The SCO defines a "moderate" noise intensity level as a "business office where type-writers are used; department store; grocery store; light traffic; [or a] fast food restaurant at off-hours." SCODICOT, Appendix D. The ALJ's inclusion of the example of an office as a SCO level-three "moderate" noise environment does not mean that Owens's RFC should now instead be interpreted as only the noise level of a quieter office typical of only "some private offices."

---

[1] *See Moore v. Colvin*, 769 F.3d 987, 989, n.2 (8th Cir. 2014) ("Social Security Ruling 004–p dictates that '[i]n making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy.'").

Therefore, because there was no conflict between the vocational expert's testimony and the DOT, substantial evidence supports the ALJ's reliance on this testimony.

### 2. Limitation to Occasional Reading and Precluding Exposure to Airborne Particulates

Owens argues that the VE's recommendation of the jobs routing clerk and garment sorter are inconsistent with the ALJ's limitation to only occasional use of a computer and reading. A routing clerk "[s]tamps, stencils, letters, or tags packages, boxes, or lots of merchandise to indicate delivery routes. Reads addresses on articles and determines route, using standard charts," DOT 222.587-038 (router), and a garment sorter "[s]orts finished garments, such as shirts, dresses, and pajamas, according to lot and size numbers recorded on tags and labels attached to garments. May fold and package garments in boxes and bags. May iron garments prior to folding . . . ." DOT 222.687-014 (garment sorter). Owens contends that the duties of both of these jobs, indicate that reading—whether it's addresses, charts, tags, or labels—would be done a third to two-thirds of the day, in excess of the limitation to only occasionally read up to one-third of the day.

Owens separately argues that the VE testified inconsistently with the DOT by recommending the position of electronics worker which requires occasional exposure to toxic caustic chemicals, despite the RFC limitation precluding exposure to "noxious fumes, odors, dust or airborne particulate." (Tr. 81).

Where a conflict exists between the vocational expert's testimony and the DOT's job description, the ALJ carries an affirmative obligation to explain and resolve this disagreement, and failure by the ALJ to resolve the conflict would result in the vocational expert's not being treated as substantial evidence. *See Jones v. Barnhart*, 315 F.3d 974, 979 (8th Cir. 2003). However, where the ALJ's error is harmless, the Court need not remand or reverse Plaintiff's case. *Renfrow v. Astrue*, 496 F.3d 918, 920–21 (8th Cir. 2007) (finding that the ALJ's failure to ask about conflicts

5

was a harmless error); *Seitz v. Colvin*, No. 5:15-CV-06151-NKL, 2016 WL 3920463 (W.D. Mo. July 18, 2016) (finding that a contradiction between the VE and the DOT in one identified job was harmless error where other jobs were still available to Plaintiff).

Here, even assuming that substantial evidence does not support Owen's ability to work as a routing clerk, garment sorter, or electronics worker, the VE identified three other jobs that Owens has not successfully challenged: price marker, small products assembler, and inserting machine operator. Between these three occupations, the VE further testified that 175,000 jobs exist in the national economy. (Tr. 90, 122, 1131–32). These figures constitute substantial evidence supporting the ALJ's conclusion that there are a significant number of jobs in the economy Owens can perform. *See Weiler v. Apfel*, 179 F.3d 1107, 1110–11 (8th Cir. 1999) (one occupation with 32,000 jobs nationally constitutes substantial evidence); *Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997) (650 jobs in the state and 30,000 jobs nationally constitute substantial evidence). Accordingly, the potential inconsistency between the VE and the DOT regarding the jobs of routing clerk, garment sorter, or electronics worker would amount only to harmless error as the record contains substantial evidence that Owens can perform jobs that exist in significant numbers in the national economy.

### B. Whether the RFC is Supported by Substantial Evidence

A claimant's RFC is the most she can do despite her limitations. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ may formulate the RFC based not only on medical evidence, but also on other relevant, credible evidence of record, though some medical evidence is required. *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012). "Although it is the ALJ's responsibility to determine

the claimant's RFC, the burden is on the claimant to establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (citations omitted).

### 1. Whether the ALJ Appropriately Incorporated the Medical Opinion of Dr. Orth

Dr. Orth is a retired neurological surgeon who reviewed Owens's medical record and testified by telephone at the hearings held on November 1, 2017 and May 1, 2018. (Tr. 97, 1099). Owens argues that the ALJ did not appropriately consider Dr. Orth's opinion as it relates to a limitation on fluorescent lights, on prolonged activity, and to the sorting of paper files, and in the alternative, that Dr. Ortho's opinion should not have been given significant weight.

#### i. Limitation Regarding Lights

Dr. Orth opined that Owens had problems with the flickering of fluorescent lights, which might be as a result of traumatic brain injury and post-concussive syndrome. (Tr. 1072, 1119–1120). Plaintiff also testified that she had problems with fluorescent lights. The RFC reasonably accounted for flickering and fluorescent lights by providing that "[s]he must have a work environment that is free of blinking lights, including neon light." (Tr. 81, 1072). Because the word blinking is used instead of flickering and the limitation applies to all lights and not just fluorescent lights, does not mean that the RFC is not supported by substantial evidence. Indeed, the RFC provides more protection because all lights are included. This is consistent with Owens's own testimony where she stated that "I can't handle any kind of lights that are flickering" and "I don't do flashing lights. They bother me. It's like it sends this like it's like overstimulating for me. It makes me feel very uncomfortable and if I don't stop it, then I can't focus on anything else going on around me." (Tr. 1072). Further, the use of the word blinking by the ALJ instead of flicker is a matter of semantics and Owens does not indicate how this choice of words substantively changes

7

the RFC. The RFC reasonably accounts for Plaintiff's difficulty relating to all lights that flicker and no further limitations were required.

### ii. Prolonged Activity

Dr. Orth opined that Owens could not do any prolonged activity and she was limited to sitting 30 minutes to an hour at a time for 4 to 6 hours; walking 30 minutes and standing for 30 minutes at a time with standing 2 to 4 hours and walking 2 to 4 hours. (Tr. 1106–07). Owens argues that, despite the fact the ALJ gave Dr. Orth's opinion significant weight, the ALJ failed to include this specific limitation in the RFC and hypothetical to the VE. (Tr. 86). Instead, the RFC limited Owens to "sit[ting] for 6 hours out of 8 hours for 1 hour at a time; stand[ing] for 4 hours out of 8 hours for 30 minutes at a time; and walk[ing] for 4 hours out of 8 hours for 30 minutes at a time." (Tr. 81, 120–121, 1130–1131).

Contrary to Plaintiff's argument, the RFC is not in conflict with Dr. Orth's testimony. Dr. Orth included a range of limitations, suggesting that any limitation within that range was acceptable. Plaintiff has not pointed to anything that suggests otherwise. Further, there is no requirement that the ALJ take the most restrictive limitations from each medical opinion, even if substantial weight is given to that doctor's testimony.

Owens's citation to *Crews-Cline v. Colvin* and related caselaw is inapt. No. 4:13-CV-00723-NKL, 2014 WL 2828894 (W.D. Mo. June 23, 2014). In *Crews-Cline* this Court held that it was reversible error where the ALJ stated that the RFC was based on a medical opinion but failed to explain why the RFC was inconsistent with the opinion and failed to discuss a severe impairment. *Id.*, at *2 ("Despite Dr. Bleazard's opinion and the ALJ's own finding that Crews–Cline's ischemic colitis was a severe impairment, there is no discussion in the ALJ's decision as to how Crews–Cline's RFC is affected, if at all, by her ischemic colitis. This is reversable error.").

Here, it is apparent that there is no inconsistency between the range offered by Dr. Orth's testimony and the RFC.

### iii. Sorting Paper Files

Owens claims that the ALJ failed to provide an explanation why there was no limitation in the RFC and hypothetical to the VE based on the opinion of Dr. Orth that her ability to sort paper files would be "somewhat restricted" due to aggravation and photosensitivity. (Tr. 1108). However, there is no requirement that all the limitations in a medical opinion must be included verbatim in the ALJ's RFC, even if the opinion is given substantial weight. Here, the ALJ accounted for photosensitivity and any aggravation, by limiting Owens to "simple, repetitive, routine work with no expectation of independent judgment" that was a "work environment free of blinking lights, including neon lights." (Tr. 81); *Suter v. Berryhill*, No. 4:16-CV00457-NKL, 2017 WL 1476156 at *9 (Apr. 25, 2017 W.D. Mo.) (citing *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011)) ("an ALJ is not required to provide a line-by-line discussion of how inconsistencies or ambiguities in the record are resolved."). There is substantial evidence in the record to support those limitations and further clarification by the ALJ was not required.

### iv. Whether Dr. Orth's Opinion was Entitled to Significant Weight

Owens argues in the alternative that, Dr. Orth's opinions should not be entitled to "significant" weight. Owens notes that Dr. Orth is not an actively practicing physician, he did not examine or treat Owens, and that his assessment and ability to assess Owens's record were deficient. (Tr. 1099, 1119); (Tr. 107–108) (noting that Dr. Orth did not know how to assess limitations for Owens' auditory processing disorder); (Tr. 1114, 1116) (noting Dr. Orth's failure to recognize certain references in Owen's medical record). The Court rejects this argument because Dr. Orth's opinion was supported by a "thorough longitudinal review of the record and detailed testimony at two hearings" and was found to be consistent with the record as a whole. (Tr.

9

86–87). Owens does not point to any deficiency in Dr. Orth's opinion itself, and her argument is belied by her reliance on the validity of Dr. Ortho's testimony when arguing that the RFC should have included additional limitations. As such, the ALJ reasonably accorded Dr. Orth's opinion significant weight.

### 2. Whether the ALJ Was Required to Further Develop the Record and Obtain Neuropsychological Testing

Owens argues that the ALJ was required to further develop the record by requiring neuropsychological testing—an examination that the ALJ had previously requested and which Dr. Orth and Dr. Kawano-Castillo believed would be relevant to Owens's claim. (Tr. 1091, 1026, 1113). "[T]he ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004).

An ALJ has an independent duty to fairly and fully develop the record. *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (citing *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)). However, Owen "bears the burden of proving disability and providing medical evidence as to the existence and severity of an impairment." *Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013). A claimant's failure to provide evidence in support of her claimed work-related restrictions "should not be held against the ALJ when there is medical evidence that supports the ALJ's decision." *Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008). When the evidence is insufficient to make a determination about disability, the Agency may request additional records, obtain a consultative examination, ask the claimant for more information, or recontact a medical source. *See* 20 C.F.R. § 404.1520b(c). But, while the ALJ has some duty to develop the record, the ALJ is not required to obtain additional evidence where, as here, the record is already well-developed. *See Tellez v. Barnhart*, 403 F.3d 953, 956–57 (8th Cir. 2005). Additionally, "reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." *Shannon v.*

*Chater*, 54 F.3d 484, 488 (8th Cir. 1995) (citing *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993)).

Though the ALJ had previously requested neuropsychological testing, the ALJ later declined a request to conduct this testing concluding the record was already sufficiently developed. (Tr. 84 n.1). At the time of the ALJ's decision of Owens's case, Owens had been seen by a variety of physicians and specialists who assessed her neurological, mental, and physiological health. *See, e.g.*, (Tr. 791–831, 891–907, 959–66, 967–78, 983–90, 996–99, 1004–55). The ALJ was aware that a neuropsychological evaluation would be valuable and "in a perfect world" would be done, but instead the ALJ opted to rely on the opinion testimony of a neurologist. (Tr. 1063). Despite the lack of a neuropsychological examination, the record was further supplemented by the assessment of Dr. Ortho. (Tr. 104–10, 1099–1129). Owens does not show how the AlJ's decision to rely on this medical record was "unfair or prejudicial," or specifically what a neuropsychological exam would have added.

Owens also claims that the reason neuropsychological testing could not be completed was due to insurance issues. However, Owens had been notified by her medical providers on May 3, 2017 and October 11, 2017 regarding a neuropsychological testing and an appointment. (Tr. 84 n.1, 965, 1042). Owen did not attend the appointment, and no further request for such an examination was made by Owen prior to the ALJ's determination. (Tr. 84–85 n.1).

### 3. Whether the ALJ Failed to Appropriately Address All of the Medical Opinions in the Record

Owens additionally points to variety of references in the administrative record which include statements regarding Owens's health that were not accounted for in the RFC. Specifically, Owens asserts the following:

> The ALJ's RFC is unsupported as she ignored multiple opinions of record, including but not limited to, the opinions restricting Owens from work (Tr. 504,

11

> 506, 508, 511, 513, 551, 764, 909); work as tolerated with no prolonged walking or standing (Tr. 515); work as tolerated with no prolonged walking or standing and limited loud noise and bright lights (Tr. 519, 521); work as tolerated with no prolonged walking and sitting, no forceful pushing and/or pulling, bending, stooping, loud noise (Tr. 523, 526, 528); a short workday or 3 days per week only (Tr. 909); no working or driving (Tr. 540); work 4 hours/day until 1/12 (Tr. 806); no lifting over 15 pounds floor to waist and waist to shoulder, no pushing/pulling, sitting with an option to stand (Tr. 769, 770, 771); no lifting over 15 pounds floor to waist and waist to shoulder, no pushing/pulling (Tr. 767, 768), complete brain rest for 24-72 hours (Tr. 540); Dr. Sand noted these head injuries often do not significantly improve until at least six months after the injury, and she would likely not reach maximal medial improvement until at least that time and he noted that vestibular therapy would be of little benefit at this time and may be discontinued. (Tr. 621).

Doc. 14 (Plaintiff's Initial Brief), at 42. However, Owens fails to establish how these references qualify as relevant and controlling medical opinions. An "ALJ is not required to discuss every piece of evidence submitted," nor does a failure to mention evidence necessarily indicate that it was not considered. *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). "In general such an omission need not lead [the C]ourt to reverse an ALJ's otherwise-supported decision." *Nowling v. Colvin*, 813 F.3d 1110, 1121 (8th Cir. 2016). The Eighth Circuit has recognized the distinction between omissions coupled with other errors, which require remand, and "arguable deficienc[ies] in opinion-writing technique" with no bearing on the outcome of the case, which do not. *See id.* (citing *Willcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2008); *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992)). Many of the treatment notes Owens cites are temporary limitations immediately after an injury and which need not be cited to in the ALJ's decision. *See* (Tr. 504, 506, 508, 511, 513, 515, 540, 551, 764, 800, 801, 806, 909) (recounting various short-term limitations that did not need to be expressly referred to in the ALJ's decision). Additionally, even if many of the notes referred to by Owens were considered medical opinions, failure to identify the weight given to those opinion is not reversible error where the ALJ appropriately accounted for these the limitations in the RFC. *See* (Tr. 519,

12

521) (limitations on exposure to loud noises and bright lights were accounted for in the RFC); (Tr. 523, 526, 528) (limitations to prolonged activity were accounted for in the RFC); (Tr. 767–71, 969, 1083, 1107) (limitations to lifting, pushing, and pulling we appropriately addressed in the RFC).

Owens cannot merely bring to the attention of this Court every instance of a medical limitation in the entirety of the medical record as evidence of the insufficiency of the RFC as "it is not the function of a reviewing court 'to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ.'" *Adkins v. Comm'r of Soc. Sec.*, 911 F.3d 547, 550 (8th Cir. 2018). The ALJ appropriately considered the entirety of the medical evidence and treatment notes and substantial evidence in the record as a whole supports the ALJ's RFC.

## IV. Conclusion

For the reasons discussed above, the ALJ's decision is AFFIRMED.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: May 11, 2020
Jefferson City, Missouri